This morning, it's 5-18-0533, Pazzius v. American Family Insurance. If parties are ready, we'll call it. Good morning, your honors. William S. Daniels, Collinsville, for the petitioner, plaintiff, appellant, Mr. Jeffrey Pazzius. As Justice Barberis may recall from our Edwardsville days, I like to cut to the chase and get to the bottom line and save the court time with our oral arguments. There are, in our brief and appeal, 16 grounds to reverse. I would like to focus on the main three. One, waiver by payment. Two, estoppel by payment. Three, waiver by American Family Insurance not ever filing its declaratory judgment action. Basic definition that you all are familiar with. Very briefly, waiver involves the intentional relinquishment or abandonment of a known right. AMFAM, as we colloquially refer to American Family Insurance in Wisconsin, AMFAM always knew of its right to file a D.J. action, but it sat back on its right for over two years, actually 30 months. A D.J. action involves action, not AMFAM's inaction. To me, the key is that payment is a recognized form of waiver, waiving any objection or dispute or defense over the item actually being voluntarily and unconditionally paid. AMFAM finally paid the May 18, 2018 appraisal award on July 9, 2018. The bench trial on the vexatious and unreasonable 155 remaining issues was held on July 31, 2018, which was after July 9, 2018, when AMFAM had waived its purported defenses and disputes over coverage by its voluntary unconditional payment. $51,564.71 was the net appraisal award that was paid. That's certainly a substantial sum. It's not de minimis in any way. AMFAM, I submit, cannot any longer argue some or any bona fide defense after it waived it by paying the net appraisal award on July 9. With AMFAM waiving its purported bona fide dispute and coverage issue by its payment, then and thereafter, there is no need to later file the policy as a trial exhibit on July 31, 2018, because coverage had already been admitted by the July 9 payment of the appraisal award. If the $51,564.71 truly was not covered, then AMFAM would not have paid it. But it did pay it. AMFAM waived its right to file the D.J. action by not filing it soon enough, or in this case, not ever filing it. AMFAM's asserted defense, merely in a claim adjuster's unilateral and self-serving letter of correspondence, never became an actually bona fide defense because it was never presented to a court for judicial determination. Its asserted defense never acquired the stature or status of a bona fide defense. No insurance company is compelled or mandated to file a declaratory judgment action on each and every low coverage dispute, but it is obligated to file one where coverage is contested and, as in this case especially, where the contested amount of loss is put into appraisal by litigation. We had to compel AMFAM to name its appraiser. We went to court to get the appraisal umpire appointed by Judge McGlynn. On the facts, I submit, the long-time chronology of this particular case, some were really at several junctures along the way. It became the duty and obligation of the American family to file its D.J. action on its issue of non-coverage. Patsy's claim coverage, for a while before July 9th payment, AMFAM had unilaterally denied coverage, but it never submitted its issue to a neutral arbiter for a judicial determination of whether its dispute was bona fide or if there was coverage or not. As this particular case, I think, clearly and aptly demonstrates on the record, no insurance company, especially AMFAM of Wisconsin, should ever be allowed to be as vexatious and unreasonable with its delays as we briefed exhaustively. As a matter of fact, AMFAM was in this Patsy's case. Therefore, the trial court associate judge, which missed the waiver by payment issue in her ruling, should be reversed on this appeal. After July 9th, when AMFAM finally paid the May 18th appraisal award, over $50,000, it was then barred or at least stopped to raise waived policy provisions in its defense of the vexatious and unreasonable delay claims against it. I think that there's been detailed briefing by both sides. I could submit more. I don't need all my time in my view, but I'm, of course, delighted to answer any questions any of the justices may have, and then I'll be back on rebuttal. Thank you. Thank you. Appreciate it very much. Thank you, Your Honors. May it please the Court, my name is Marcus Raymond, attorney for American Family. I guess the drawback and benefit of going second is I get to know what to respond to. I, too, will keep it brief. If the waiver is the main argument that Patsy wants to put forward, I will address that first. The key to all of this, and Patsy's attorney mentioned it briefly, is whether or not American Family had a bona fide defense. The case law is consistent and cited in the briefing that as long as there's a bona fide defense regarding coverage, there can be no vexatious damages. I don't think there's a dispute on that. I don't think there could be. And in this case, there was a bona fide defense. It had been raised myriads of times before litigation, during litigation. The transcript will show that it was raised. The pleadings at the trial court level also show that it was raised. And so Patsy's would have known that this was an issue. The court, the trial court, Judge Juba Katz, also came to the conclusion that there was a bona fide defense in this case. And so if I'm just saying there's a bona fide defense, that may be one thing. But in this case, we have a neutral, learned, well-reasoned opinion from a member of the bench saying that there was, in fact, a bona fide defense. It strikes me as logically difficult to come to a conclusion that there was no bona fide defense if a judge was convinced that there was. It's not. She had no stake in it. It's just her opinion after reviewing the facts in the law. That being said, as long as there's a bona fide defense, American family cannot be on the hook for any vexatious damages. If, in fact, the argument is that the waiver eliminated the bona fide defense, then the waiver occurred at the time of payment. And as long as the facts that are pled that Patsy's believed led to a vexatious refusal in this case all happened before the payment. It would be difficult to argue that things after payment were vexatious because they got what they got. They got what they wanted. So it strikes me as a logically difficult position for Patsy's to take. Well, you have these defenses, then you waive them, but all the things that happened that we think you did wrong before you waived them, now you don't have the bona fide defense because, in fact, the bona fide defense was, in fact, in existence. Almost, I think, Patsy's is admitting that there was a bona fide defense if there's a waiver, because there had to have been something that had to have been waived. Aside from that, this case involves an abuse of discretion standard of review. Judge Julie Katz, I don't think it could be said she shot from the hip on this. The order that she wrote is six pages long, 24 paragraphs, cited case law, cited the record. The argument in the motion for a new trial, you know, was conducted. It took several ñ it was a lengthy hearing. She opines on the record why she ruled that she did. This was a case that involved testimonial evidence. She was in a position to see both Mr. Patsy's and Ron Cleveland, who was the adjuster for American Family, who is mentioned in the record. She got to see both of their demeanors and their testimony. And she is afforded deference under the charter case that was cited by both sides in the briefs. The charter says the ultimate decision regarding sanctions under Section 155 penalties is reviewed for an abuse of discretion. It also states the legislative intent was to invest the decision with the trial court. She gave enough reasons and well-reasoned legal opinion regarding why she ruled that she did, though this Court can obviously take a look at that. I think she is afforded discretion and it would be difficult for this Court to overrule what she came up with. Patsy has never satisfactorily answered a question that was asked at the trial court level, which was why didn't you or why didn't Patsy file a breach of contract claim at the beginning? Instead, this fire happened in 2016. There was never a breach of contract claim or declaratory judgment action filed by Patsy. There isn't a reason why Patsy could not have done so. Patsy is savvy enough to have made it to this Court. I presume Patsy could have filed a breach of contract claim, which is how this normally would have been resolved, and it would have been resolved probably without an appearance here today. Correct me if I'm wrong, but didn't Patsy's alleged or suggested it was the AMFAM's responsibility to file a DG action, and that's because they didn't find there was any ambiguity or any issue with the coverage? That is their assertion, Your Honor, yes. When was that brought to AMFAM's attention? The first time I remember it, Your Honor, was during the arguments on this particular issue. So it would have been after the payment had already been made. And the argument, it's based on CORTE, K-O-R-T-E is where that comes from. And that case is not applicable here. This is a property damage case between an insured and an insurer. The CORTE case is a liability case in which the insurer was trying to get coverage for a wrongful death action. And then the CORTE court said, well, when that happens, the insurer has three options. They file a DG action, defend, or defend under reservation of rights. That case is totally not applicable here. There's no legal jeopardy that Patzias was placed in in this dispute. There's no ticking time bomb of an answer being due. It was a distinction that was picked up by Judge Katz as well. And it was, I think, cited in a way that would not let Your Honor see what that case was about by Patzias. The case law that is before this Court does not support any notion, Your Honor, that American family has a duty to every time there's a contractual dispute between an insured and an insurer to file a declaratory judgment action. I imagine most people would not want to be held in the Court every time there was a dispute. Most of these things have worked out. And if Patzias felt strongly about this, he would file a breach of contract claim. I'm sure Your Honor has seen more than a few of those up here between an insurer and an insurance company. So that notion is just not supported under the law whatsoever that American family had some super duty to file a declaratory judgment action in this case. I said I'd be brief. I don't want to make myself a liar. So I will sit down unless Your Honor has any further questions for me. Thank you, Your Honor. Thank you, Justices. In rebuttal, American family suggests that the key is that it had a bona fide defense, which was never presented in court, of course. One cannot reach a bona fide defense without a D.J. action with a neutral arbiter or court on an even playing field finding that there was a bona fide defense, not just an asserted defense. But a bona fide defense that rises to that level. And we recorded Miriam and Black in the brief. In the oral arguments you just heard for the EPLI, I heard an acknowledgement that any vexatious and unreasonable acts and delays were before the payment on July 9. I don't think that's tenable. I don't think you can do everything they did in this case and then excuse yourself with a fig leaf of an alleged bona fide defense that was never brought to court. And there were delays, vexatious and unreasonable delays, between July 9 and July 31, 2018. Not filing a declaratory judgment action continued to be vexatious and unreasonable. There was no motion to vacate the appraisal award. And here, I think, is the most important part. American Family, as is in the record, did not pay the appraisal umpire and Patsy's appraiser until Monday, July 30, 2018. Now 5-397.05 mandates that payment, where the award by the umpire matches the figure of the umpire. Or the figure of the insurance appraiser. In the statute, American Family, in its pleadings, denied that it had any such responsibility contrary to Illinois statute. I submit that there's no difference in legal principles between a third-party insurance case and a first-party insurance case. Mr. Patsy's has been hung out to dry in this case. Had to fix a burned house out of his own pocket. You know from the briefs, they paid $3,808.20, but it cost over $55,000 by the appraisal award to make those repairs. Paying 7.35% and leaving 92.5% to your insurer is vexatious and unreasonable. We get to vexatious and unreasonable if they waive by their payment. The question remains, in my final remarks here, my submission of what's the optimum method for this court reversing this associate judge's trial court. Although a published opinion is always salutary, a Rule 23 order seems to fit the bill better in this particular case, and I'll suggest why. The waiver by payment issue in this case, as I see it, is too simple, too straightforward, too easy for these facts to be a testing hypothetical on an Illinois bar example. Waiver by payment, it's a pop fly. This case was also, in my view, too easy for a law school curriculum class on insurance policy contracts. It's too clear, waiver by payment. This case might be instructive in a college or university basic pre-law class. Waiver by payment is an introductory principle. When you pay without a release, without a D.J. action, without a reservation of rights, you waive the entire defense if you ever really had a bona fide defense in the first place. AmFam waived its defense by two things. One, paying the claim, and two, not filing its D.J. action. Or, after we went to court to get the umpire appointed to get AmFam compelled to name its appraiser, AmFam did not counterclaim in litigation my client had to bring. So the D.J. action absence and the payment especially waives that defense. I think that waiver by payment by American Family on July 9, 2018, there would not be a significant precedential value for this case to be a published opinion. That's entirely up to you. I think a Rule 23 order may be the best method, but either way, we respectfully submit to the court. I do have a couple questions. First, under your theory, the sole burden is on the defendant to file the D.J. action, correct? In this particular case, with this procedural posture, with us having gone to court first for the umpire and the appraiser, for them to assert a coverage defense, it's too late. They did not. They sat back on their right. So if not waiver, estoppel, it's really clear. The other question I have is, once you have the payment on the claim, after going through the arbiter and all those things, that issue gets resolved. But then you go to a trial, and the trial judge hears this claim of the vexatious and unreasonable. Aren't those essentially two different issues? And you had a trial on the second issue, and the trial judge found in the defense's paper, correct? Well, the problem with that is that the trial court disclaimed any coverage dispute issue being decided that day. The only issue was the 155 penalty attorney fee and prejudgment interest. But for the court to say there was a bona fide defense, he had to actually decide the declaratory judgment coverage question. There's no separation there. And that's where Her Honor ran afoul of established law of waiver. Okay. Thank you. Certainly. All right. Thank you very much. Thank you, Justices. Thank you both for your arguments. The court will take the matter under consideration on the issue of ruling in due course.